HOUSING AUTHORITY OF the CHOC-
TAW NATION, State of Oklahoma, and
Bennett Veach, Irene Heard, Lewis Cass
and Charles McIntyre, Petitioners,

v.

G. Gail CRAYTOR, Judge of the District
Court of Choctaw County, State of
Oklahoma, Respondent.

No. 53411.

Supreme Court of Oklahoma.

June 26, 1979.

Rehearing Denied Sept. 24, 1979.

Dennis & Branam, Antlers, for petition-
ers.

Kile, Rabon & Pullin, Hugo, for respon-
dent.

BARNES, Justice:

Under the provisions of the Oklahoma
Housing Authority Act,[1] a Housing Author-
ity is created in each city and town within
the State, and such Housing Authorities
may conduct business and exercise powers
of the Authority upon the proper passage of
a resolution by the governing body declar-
ing that there is a need for an Authority to
function.

· Section 1057 of that Act [2] specifically pro-
vides for the creation of Indian Housing
Authorities. That Section provides:

1. 63 O.S.1971, § 1051, et seq.

2. Unless otherwise indicated, all Sections re-
ferred to are from Title 63 of the Oklahoma
Statutes.

"There is hereby created, with respect to each Indian tribe, band, or nation in the state, a public body corporate and politic, to function in the operating area of such Indian tribe, band, or nation to be known as the 'housing authority' of said Indian tribe, band, or nation, which *shall be an agency of the State of Oklahoma, possessing all powers, rights, and functions herein specified for city and county authorities created pursuant to this act: Provided that said Indian Housing Authority shall not transact any business nor exercise its powers hereunder until or unless the governing council of said tribe, band, or nation, as the case may be by proper resolution, declares that there is a need for an authority to function for said tribe, band, or nation.*

"Except as otherwise provided in this act, all the provisions of law applicable to housing authorities created for cities and counties and the commissioners of such authorities shall be applicable to Indian Housing Authorities and the commissioner thereof, unless a different meaning clearly appears from the context. *The Chief or other governing head of an Indian tribe, band, or nation is hereby authorized to exercise all appointing and other powers with respect to an Indian Housing Authority that are vested by this act in the mayor of a city relating to a City Housing Authority.*" [Emphasis added]

The Governing Council of the Choctaw Nation, by proper resolution, declared that there was a need for an Authority to function for that Nation. Appointments to the Commission were made and the Choctaw Nation Housing Authority has functioned for several years.

In the original matter before us, we are asked to assume original jurisdiction and issue a Writ of Mandamus. The dispute is between two groups of individuals, each claiming to be the properly appointed Commissioners of the Choctaw Nation Housing Authority. One group of Commissioners claims their office by virtue of an appointment by the recently elected Chief of the Choctaw Nation, Hollis Roberts. The other group claims their office by virtue of appointments by Mr. Emery Spears, who, at the time he made the appointments, was the "Executive Director and Administrator and Coordinator of all government and tribal programs which existed for the benefit of the Choctaw Nation in Oklahoma." Mr. Spears was appointed on an interim basis by the Secretary of the Interior through the local office of the Bureau of Indian Affairs. He was to handle the social and economic functions of the Choctaw Nation in an interim period brought about by the death of the then-Chief of the Choctaw Nation. This interim period ended upon the election of the new Chief, Chief Hollis Roberts.

During this interim period, the tenure of several Commissioners expired, and Mr. Spears reappointed the Commissioners for a new three-year term. The terms of Commissioners are established by the Oklahoma Housing Authority Act at Section 1058.[3]

The new three-year term of office of those appointed by Mr. Spears had not yet expired when Chief Roberts, after his election, appointed new Commissioners.

The Board of Commissioners, with the new members appointed by Chief Roberts, proceeded to meet and fire the Executive Director of the Authority, Mr. Charles McIntyre.

Mr. McIntyre and the three Commissioners appointed by Mr. Spears brought an action in the District Court of Choctaw County, seeking a declaratory judgment in which they asked the court to rule that they

---

**3.** Title 63 O.S.1971, § 1058, provides in part: "When a housing authority is authorized to transact business and exercise powers hereunder, five persons shall be appointed as commissioners of the authority (1) in case of a city, by the mayor with the advice and consent of the governing body, or (2) in the case of a county, by the board of county commissioners. The term of office of each commissioner shall be for three (3) years, except that of the commissioners first appointed one shall serve for a term of one (1) year and two shall serve for terms of two (2) years. All vacancies shall be filled for the unexpired term. Each commissioner shall qualify by taking the official oath of office prescribed by statute or ordinance for elected officials of the county or city, as the case may be."

are the properly appointed Commissioners. Additionally, they asked that those individuals appointed by Chief Roberts be restrained and enjoined from interfering with Mr. McIntyre's duties and from conducting business or exercising any of the powers of the Housing Authority.

The defendants in that action, Chief Roberts and his appointees, filed an objection to jurisdiction, arguing that the matter sought to be resolved in the State District Court was an intra-tribal dispute between tribal members and a tribal chief, regarding an internal tribal government affair. The trial court sustained this objection to jurisdiction, and the Petitioners, Mr. Spears' appointees and Mr. McIntyre, have petitioned this Court to assume original jurisdiction and issue a Writ of Mandamus, requiring the District Court to proceed further in the case, arguing that the District Court has jurisdiction over the issues brought before it.

The dispositive issue in this case, with respect to jurisdiction, is whether the matter brought before the trial court was an intra-tribal matter, or a Housing Authority matter. Even the Respondents admit that the District Court has jurisdiction over the Housing Authority and its activities. And, indeed, District Courts do have jurisdiction over the Housing Authorities, for the Au-

thority became a public body, both corporate and politic, by virtue of the Oklahoma Housing Authority Act and by virtue of the Choctaw Nation's voluntary choosing to have a functioning Authority under the Act.

*The powers, duties, and responsibilities of the Housing Authority and its officers are established and defined in the Act, not be tribal law.* Thus, the questions raised in the District Court are all questions which can be answered by interpreting the powers of appointment and removal established by the Act—all questions which the District Court has jurisdiction over.[4]

Section 1057 of the Act provides in part that: ". . . *The Chief or other governing head* of an Indian tribe, band, or nation is hereby authorized to exercise all appointing and other powers with respect to an Indian Housing Authority that are vested by this act in the mayor of a city relating to a City Housing Authority." [Emphasis added]

Section 1058 of the Act provides that appointments of the five Commissioners of the Housing Authority, in the case of a city, shall be made by the city's mayor, with the advice and consent of the governing body. This power to appoint is vested in certain individuals by the statute. Although the

4. The defendant below would have us believe that we are bound by a decision issued by the Federal District Court in *Ware v. Richardson*, 347 F.Supp. 344 (W.D. Okl. 1972). The only holding in that case was that no Federal question existed, and since there was not a complete diversity of citizenship, the Federal Court lacked jurisdiction to entertain the complaints brought by the plaintiffs, enrolled Kiowa Indians and members of the Kiowa Indian Council, the governing body of the Kiowa Tribe, who brought an action against certain Federal officials. The plaintiffs in that case brought their action against Elliott Richardson, who at that time was head of the Federal Housing Urban Development Programs, and other Federal officials who were alleged to be acting "in concert" with a co-defendant, the Housing Authority for the Kiowa Tribe of Indians of Oklahoma. The principal complaint raised was that housing provided by the Kiowa Housing Authority was substandard and not worth the money being paid for them. Among other allegations raised were the following: That the members

of the Kiowa Housing Authority Commission had not been appointed with the prior approval of the Kiowa Indian Council, in violation of 65 O.S. § 1057, and that members of the Authority had conflicts of interest. In ruling that no Federal questions were raised, the Federal District Court held that the dispute raised was an intra-tribal one and in making this ruling held that "While it is nominally a State agency [the Kiowa Housing Authority], it is statutorily freed of State control and subject to the unfettered control of the Tribe."

The issues before us are different from those before the Federal District Court, and, even if they were not, we are not bound by that court's interpretation. But, in any event, the issue determined in that case was whether or not Federal courts had jurisdiction over the disputes raised, and was not an adjudication of Oklahoma courts' jurisdiction over such matters. For these reasons, we are not persuaded by the argument that *Ware v. Richardson* is controlling in the case before us.

Chief or other governing head of an Indian tribe, band, or nation is the person designated to exercise such powers, his or her power to appoint is not defined by tribal law; rather, it is defined by the State Act. While it is true that a dispute involving one's rightfully holding the office of Chief would be intra-tribal matter, a Chief's power under the statute would *not* be an intra-tribal matter.

The particular questions raised in the trial court involve a determination of Mr. Spears' power to appoint under the Act. Any power of appointment vested in him came from the State—not from the tribe. The threshold question presented is whether Mr. Spears, by virtue of his appointment by the local Bureau of Indian Affairs' Director, was an *"other governing head of an Indian tribe, band, or nation"*, as that term is used in the Act at Section 1057. If he comes within the definition of that term, he was, pursuant to the statute, empowered to make appointments as set forth above. This issue is not an internal tribal issue. A resolution of the issue requires an interpretation of State statute only, and that interpretation is not dependent upon any intra-tribal matter. The matter is therefore a Housing Authority one, and even the defendants below, as mentioned above, do not argue that State courts do not have jurisdiction over the Housing Authority.

This being the case, the trial court's ruling that it did not have jurisdiction over the issues brought before it was in error. As the matter was within the jurisdiction of the trial court, the Respondent Trial Judge had a duty to further proceed below. Accordingly, we issue a Writ of Mandamus, requiring the Trial Judge to assume jurisdiction over the action brought by the Petitioners, and to further proceed in that action.

ORIGINAL JURISDICTION ASSUMED, WRIT OF MANDAMUS ISSUED, AND THE ACTION RETURNED TO THE TRIAL COURT.

WILLIAMS, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.